FILED
MAILROOM
JUL 2 8 2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

KERON TOOLES,

Plaintiff,

v.

HILTON EMPLOYER, INC.,

Defendant.

**Civil Action No.** 1:26 cv 2311-RDA-IDD

**COMPLAINT AND JURY DEMAND**

Plaintiff Keron Tooles ("Plaintiff"), proceeding pro se, brings this action against Defendant Hilton Employer, Inc. ("Hilton" or "Defendant") and alleges as follows:

## INTRODUCTION

1. This case concerns intentional race discrimination in the terms and termination of Plaintiff's employment under 42 U.S.C. § 1981, retaliation for Plaintiff's use of approved leave under the Family and Medical Leave Act ("FMLA"), and interference with Plaintiff's FMLA restoration rights.

2. Plaintiff is an African American man who worked in Hilton's corporate Marketing & Loyalty organization in McLean, Virginia. The manager who supervised Plaintiff for most of 2024 submitted an "Exceeds Expectations" assessment before leaving Hilton.

3. After Kimberly Wingert became Plaintiff's supervisor, core planning and reporting duties were reassigned to Sara Weaver and Katie Sands, both Caucasian. Plaintiff's direct reporting was later shifted to Ms. Sands; Plaintiff was excluded from leadership meetings he previously attended after his planning-leadership duties were stripped; and Ms. Wingert delivered a sharply lower year-end assessment that conflicted with Plaintiff's prior record.

4. Plaintiff raised internal concerns and began approved FMLA leave on March 4, 2025. On April 7, 2025, while Plaintiff remained on leave, Nancy Kennedy closed Hilton's internal investigation as unsubstantiated and Erin Sprague then announced during the same call that Plaintiff's position was being eliminated. Ms. Sprague stated that Plaintiff's employment would end May 27, 2025, which she expressly described as "the conclusion of your FMLA leave of absence," unless Plaintiff obtained another internal role.

5. Plaintiff's approved leave ended May 26, 2025, and Hilton terminated him effective May 27, 2025, the day after the leave ended. On December 19, 2025, Hilton advertised on its careers website and LinkedIn a position in the same organization and location containing the same or materially similar core planning, reporting, process-optimization, and operating-rhythm responsibilities Plaintiff had performed.

6. Plaintiff seeks monetary damages and appropriate non-monetary relief, but does not seek reinstatement.

## PARTIES

7. Plaintiff Keron Tooles is a resident of San Diego County, California. His mailing address is 1908 Hotel Circle North, Apartment 6077, San Diego, California 92108.

8. Plaintiff is African American. Before his leave began, he had worked for Hilton for more than 12 months and at least 1,250 hours during the preceding 12 months, and Hilton approved and designated his leave under the FMLA.

9. Defendant Hilton Employer, Inc. is a private corporate employer that employed Plaintiff at its workplace located at 7930 Jones Branch Drive, McLean, Virginia 22102.

10. At all relevant times, Hilton was subject to 42 U.S.C. § 1981 and the FMLA. Hilton approved and designated Plaintiff's leave as FMLA leave. Upon information and belief, Hilton employed at least 50 employees within 75 miles of Plaintiff's worksite.

## JURISDICTION AND VENUE

11. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under 42 U.S.C. § 1981 and the FMLA, 29 U.S.C. §§ 2615 and 2617.

12. This Court also has jurisdiction over Plaintiff's civil-rights claim under 28 U.S.C. § 1343(a)(4).

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2). Hilton resides in this District because it is subject to personal jurisdiction here, and a substantial part of the events and omissions giving rise to these claims occurred at Hilton's McLean, Virginia workplace in Fairfax County.

14. This action is properly assigned to the Alexandria Division because the relevant workplace and a substantial part of the events at issue are located in Fairfax County, Virginia.

## FACTUAL ALLEGATIONS

15. Plaintiff began working in Hilton's corporate Marketing & Loyalty organization on February 20, 2024 in a manager-level strategy, planning, and performance role based at Hilton's McLean, Virginia headquarters.

16. Plaintiff worked for Hilton-affiliated businesses during multiple periods beginning in approximately December 2016. His relationship with the broader Hilton family of brands spanned approximately eight and one-half years, including a period when he left to pursue other opportunities.

17. For most of Plaintiff's 2024 corporate tenure, Kevin Gaver supervised him. Mr. Gaver's last day was on or about October 24, 2024, and before departing he completed and submitted an "Exceeds Expectations" assessment of Plaintiff's performance.

18. Mr. Gaver's transition documentation assigned Plaintiff continuing responsibility for core strategic-planning and reporting functions, including weekly, monthly, and quarterly reporting rhythms and process-optimization work.

19. On or about November 13, 2024, Kimberly Wingert joined the team as a Senior Director and became Plaintiff's supervisor.

20. In December 2024 and January 2025, key planning responsibilities Plaintiff had performed were reassigned to Sara Weaver and Katie Sands, both Caucasian, without a performance-based explanation being communicated to Plaintiff.

21. The only formal discipline Plaintiff received during the corporate employment at issue was a December 16, 2024 written warning and indefinite corporate-card suspension issued by Ms. Wingert in connection with a holiday-party expense report.

22. Plaintiff had submitted the expense report consistent with guidance he received from finance and travel-administration personnel, including Badal Patel, Blanca Lopez, and travel administration. Ms. Wingert approved the same expense report on December 19, 2024.

23. Plaintiff was never placed on a performance-improvement plan, and Hilton did not conduct a separate integrity investigation before assigning the "Does Not Meet Expectations" Integrity rating.

24. In early February 2025, at Ms. Wingert's direction, Plaintiff's direct reporting shifted to Ms. Sands, a Senior Manager. Ms. Wingert nevertheless delivered Plaintiff's February 26, 2025 year-end review.

25. After Plaintiff's planning-leadership duties were stripped and reassigned, Plaintiff was excluded from leadership meetings he had previously attended. Upon information and belief, Ms. Sands, who absorbed Plaintiff's duties, continued to attend.

26. On February 26, 2025, Ms. Wingert rated Plaintiff "Partially Meets Expectations" overall. The review also contained a "Does Not Meet Expectations" rating on Integrity.

27. During the review meeting, Ms. Wingert acknowledged that Plaintiff had experienced repeated management changes, had received different feedback from different leaders, and had not been set up for success under prior leadership.

28. Ms. Wingert nevertheless characterized Plaintiff as "acting like a victim" and "being defensive" when he attempted to explain the conflicting feedback.

29. After the review meeting, Ms. Sands told Plaintiff that she did not agree with Ms. Wingert's rating and encouraged him to challenge it internally.

30. Despite the sharply reduced rating, Hilton paid Plaintiff a $6,916 performance bonus and awarded him an approximately 1.25 percent merit increase in March 2025.

31. On February 28, 2025, Plaintiff met with Geneva Griffin in Human Resources concerning FMLA and other leave options. A separate meeting to address Plaintiff's workplace concerns was arranged for the following week.

32. On March 3, 2025, Plaintiff met with Nancy Kennedy, Director of Team Member Relations, and raised concerns about performance-review bias and toxic workplace behavior. Ms. Kennedy told Plaintiff that Hilton could not lawfully retaliate against him for raising concerns and opened an investigation.

33. Plaintiff began approved FMLA leave on March 4, 2025.

34. On April 7, 2025, while Plaintiff remained on approved FMLA leave, Erin Sprague, Human Resources Director, asked Plaintiff by email to participate in a call titled "Business Update - Request for meeting today (4/7)."

35. During the first portion of the April 7 call, Ms. Kennedy informed Plaintiff that Hilton had found his internal concerns unsubstantiated and closed the investigation.

36. During the second portion of the same call, Ms. Sprague informed Plaintiff clearly that his position was being eliminated due to restructuring and that his employment would end on May 27, 2025 unless he applied for and obtained another role within Hilton.

37. Ms. Sprague expressly described May 27, 2025 as "the conclusion of your FMLA leave of absence."

38. Hilton communicated the position-elimination decision on April 7, 2025. The termination became effective on May 27, 2025.

39. Plaintiff's approved leave ended May 26, 2025, and Hilton terminated his employment effective May 27, 2025, the day after the leave ended.

40. Hilton presented Plaintiff with a Separation Agreement and Release dated May 27, 2025. Plaintiff did not sign the agreement and did not release his claims.

41. Hilton represented that the elimination resulted from business restructuring, including changes in the competitive landscape and resource prioritization.

42. On December 19, 2025, Hilton advertised on its careers website and LinkedIn an opening for "Senior Analyst, Marketing & Loyalty Strategy & Operations," requisition COR015FD, based at the same McLean headquarters.

43. The advertised position included developing departmental goals and roadmaps; establishing weekly, monthly, and quarterly business rhythms; auditing and optimizing processes; administering team tools; and maintaining a departmental reporting calendar.

44. Those advertised duties were the same or materially similar to core functions Plaintiff had performed and that Hilton represented had been eliminated.

45. Hilton's internal records concerning the later requisition, the restructuring decision, who performed Plaintiff's former duties after May 2025, and the person selected for the later opening are within Hilton's possession and are expected to clarify whether the work was genuinely eliminated.

46. The reassignment of Plaintiff's duties to Caucasian colleagues, the abrupt reversal of the assessment Mr. Gaver submitted, the inconsistency between the sharply reduced rating and Plaintiff's bonus and merit increase, the timing and handling of the only formal discipline, and the later advertisement of materially similar work collectively support an inference that Hilton's stated explanation was not the complete or true reason for its actions.

47. As a result of Hilton's actions, Plaintiff lost wages, employment benefits, and other compensation and suffered other compensable harm.

## COUNT I

## RACE DISCRIMINATION - 42 U.S.C. § 1981

48. Plaintiff incorporates paragraphs 1 through 47 as though fully set forth here.

49. Plaintiff had an employment contractual relationship protected by 42 U.S.C. § 1981.

50. Plaintiff is African American and was qualified for his position, as reflected by the "Exceeds Expectations" assessment submitted by Mr. Gaver, Plaintiff's continued ownership of core functions, his bonus, and his merit increase.

51. Hilton subjected Plaintiff to materially adverse employment actions affecting the terms and conditions of his employment, including reassignment of core responsibilities, a sharply reduced performance assessment, and termination.

52. The circumstances support a plausible inference of intentional race discrimination, including reassignment of Plaintiff's work to Caucasian colleagues, the abrupt reversal of the assessment submitted by Mr. Gaver, the inconsistency between the sharply reduced rating and Plaintiff's bonus and merit increase, the timing and handling of Plaintiff's sole formal discipline, and evidence that Hilton's restructuring explanation may be pretextual.

53. Plaintiff alleges that, but for his race, Hilton would not have subjected him to the same pattern of adverse treatment and termination.

54. Hilton acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

55. Plaintiff suffered lost wages, benefits, and other compensable damages as a result.

**COUNT II**

**FMLA RETALIATION - 29 U.S.C. § 2615(a)(2)**

56. Plaintiff incorporates paragraphs 1 through 55 as though fully set forth here.

57. Plaintiff exercised protected FMLA rights by taking leave that Hilton approved and designated as FMLA leave.

58. Hilton announced the elimination of Plaintiff's position while he was on approved leave and terminated him effective the day after that leave ended.

59. Ms. Sprague expressly described the May 27, 2025 separation date as "the conclusion of your FMLA leave of absence."

60. The timing and sequence support a causal connection between Plaintiff's protected leave and the adverse actions, including the decision during leave, the separation date expressly tied to the conclusion of leave, termination the day after leave ended, and evidence from the later posting that the stated restructuring explanation may have been incomplete or pretextual.

61. Plaintiff alleges that Hilton would not have taken the same adverse actions absent his exercise of FMLA rights.

62. Plaintiff suffered lost wages, benefits, and other compensable damages as a result.

**COUNT III**

**FMLA INTERFERENCE - 29 U.S.C. § 2615(a)(1) (PLEADED IN THE ALTERNATIVE)**

63. Plaintiff incorporates paragraphs 1 through 62 as though fully set forth here.

64. This count is pleaded in the alternative to Count II.

65. Plaintiff was entitled, upon return from protected leave, to restoration to the position he held before leave or to an equivalent position, unless Hilton could establish that the position truly would have been eliminated regardless of leave.

66. Hilton denied restoration by terminating Plaintiff effective the day after his approved leave ended.

67. The December 2025 posting of materially similar core work supports a reasonable inference, subject to discovery, that materially similar functions remained necessary or were restored after Plaintiff's separation. That evidence bears on whether Hilton would have eliminated Plaintiff's position regardless of his leave.

68. Hilton thereby interfered with, restrained, or denied Plaintiff's exercise of FMLA restoration rights in violation of 29 U.S.C. § 2615(a)(1).

69. Plaintiff was prejudiced by the denial of restoration and lost wages, benefits, and other compensation recoverable under 29 U.S.C. § 2617.

**PRAYER FOR RELIEF**

A. Enter judgment in Plaintiff's favor on Counts I through III;

B. Award back pay, front pay, lost benefits, and other economic losses proven at trial;

C. Award compensatory and punitive damages under 42 U.S.C. § 1981 to the extent permitted by law;

D. Award damages authorized by 29 U.S.C. § 2617, including liquidated damages unless Hilton proves the statutory good-faith defense;

E. Award prejudgment and post-judgment interest and taxable costs;

F. Declare that Hilton violated Plaintiff's rights under applicable federal law;

G. Order appropriate equitable relief short of reinstatement, including correction or removal of the disputed 2024 performance and Integrity ratings, a neutral employment-reference protocol, and written confirmation that Plaintiff's separation was attributed to restructuring rather than performance or misconduct, to the extent such relief is authorized and supported by the evidence;

H. Award any other relief the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
Date: July 25, 2026
Signature: Keron Tooles

Keron Tooles, Pro Se
1908 Hotel Circle North, Apartment 6077
San Diego, CA 92108
(443) 822-9036
KeronTooles@gmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

KERON TOOLES, Plaintiff

Civil Action No. 1:26-cv-02311-RDA-IDD

v.

HILTON EMPLOYER, INC., Defendant

## LOCAL RULE 83.1(N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of this Complaint and Jury Demand.

Keron Tooles
___________________________
*Name of Pro Se Party (Print or Type)*

Keron Tooles
___________________________
*Signature of Pro Se Party*

July 25, 2026
___________________________
*Executed on (Date)*